United States District Court
Eastern District of Michigan
Southern Division

United States of America,

Case No. 21-CR-20490

v.

Hon. Victoria Roberts

Andre Spivey,

Defendant.

_____ /

# Plea Agreement

The United States of America and the defendant, Andre Spivey, have reached a plea agreement under Federal Rule of Criminal Procedure 11. The plea agreement's terms are:

**1.    Count of Conviction**

The defendant will waive his right to an indictment and will plead guilty to Count 1 of the Information. Count 1 charges the defendant with conspiracy to commit federal program bribery under 18 U.S.C. §§ 371 & 666.

## 2.    Statutory Minimum and Maximum Penalties

The defendant understands that the counts to which he is pleading guilty carry the following minimum and maximum statutory penalties:

| Count 1 | Term of imprisonment: | Five Years |
|---------|----------------------|------------|
|         | Fine: | $250,000 |
|         | Term of supervised release: | Three Years |

## 3.    Agreement Not to Bring Additional Charges

If the Court accepts this agreement and imposes sentence consistent with its terms, the United States Attorney's Office for the Eastern District of Michigan will not bring additional charges against the defendant for the conduct reflected in the Information and the factual basis of this agreement.

## 4.    Elements of Count of Conviction

The elements of Count 1, charging a violation of Title 18, United States Code, Section 371, that the government would need to prove at trial are:

(1) Two or more persons conspired, or agreed, to commit the crime alleged, federal program bribery.

(2) The defendant knowingly and voluntarily joined the conspiracy.

(3) One or more overt acts were committed by a conspirator in furtherance of the illegal purpose.

(4) The defendant had the intent to help commit bribery.

Elements of Federal Program Bribery

(1) An agent of a local government corruptly accepted or agreed to accept something of value;

(2) The agent did so with the intent to be influenced or rewarded in connection with a business, transaction or series of transactions with that local government;

(3) The business, transaction or series of transactions involved something of value of $5,000 or more; and

(4) The local government received $10,000 or more in federal assistance in a one-year period before or after the time of the offense.

5.    **Factual Basis**

The parties agree that the following facts are true, accurately describe the defendant's role in the offense, and provide a sufficient factual basis for the defendant's guilty plea:

From 2009 through 2020, the defendant was an agent of the City of Detroit, Michigan, in that he served as an elected member of the Detroit City Council.

From 2017 to the present, the Detroit City Council was considering whether to adopt a new towing ordinance in order to regulate the towing industry within the City of Detroit. Beginning in 2017, a confidential source of information ("CS") for the FBI began working with the government. The CS was involved in the towing industry in Detroit who was approached by the FBI concerning corruption within the city government as it relates to towing. The CS has not been paid by the FBI (other than for expenses related to the CS's cooperation), and the CS is not seeking to avoid being charged or to reduce a pending criminal charge.

On February 18, 2018, the CS met with the defendant. The meeting was recorded. During that meeting, the CS asked the

defendant for help in getting a City of Detroit contract. As the CS asked the defendant for help with the contract, the CS provided the defendant with $2,000 in cash.

On October 26, 2018, the CS and an undercover federal agent, posing as a business associate of the CS, met with the defendant at the Side Street Diner in Grosse Pointe, Michigan. The meeting was recorded. During the meeting, the CS provided the defendant with $1,000 in cash, and the undercover agent gave the defendant $1,000 in cash, as they asked the defendant to help them with a proposed City of Detroit towing ordinance. During the meeting, the defendant wrote a draft text message on his cell phone and silently showed the draft message to the CS. In the text, the defendant asked the CS if he (the defendant) could trust the undercover agent, seeking to determine if the undercover agent was a member of law enforcement.

On April 9, 2019, the CS met with the defendant. The meeting was recorded. During the meeting, the CS provided the defendant with $2,000 in cash, and again asked for help with towing issues pending before the city council.

On July 2, 2019, the CS met with the defendant and gave the defendant $2,000 in cash. The meeting was audio and video recorded. The CS asked the defendant for help with the towing ordinance.

On November 25, 2019, the CS met with the defendant at the Dearborn Meat Market in Dearborn, Michigan. The CS gave the defendant $1,900 in cash and requested assistance with towing issues. The meeting was audio and video recorded by the CS.

On January 22, 2020, at the direction of the defendant, the CS gave a $10,000 payment to *Public Official A* in order to support the defendant's birthday party fund-raising event. *Public Official A* was a member of the defendant's staff and was an agent of the City of Detroit. The defendant asked the CS to deliver the money to *Public Official A*. During the meeting between the CS and *Public Official A*, *Public Official A* asked the CS for an additional $4,000 to support the defendant's birthday party. The CS then asked *Public Official A* if the defendant was working to get a city contract for the CS. In response, *Public Official A* assured the CS that the defendant was working hard to get a towing contract for the CS.

On January 27, 2020, the CS met with the defendant and provided him with $4,000 in cash.  The meeting was recorded.  During the meeting, the CS asked the defendant for help with issues relating to towing and the city council.

On February 21, 2020, the CS and the undercover FBI agent met with *Public Official A*.  The meeting was recorded.  During that meeting, the CS provided $8,000 in cash to *Public Official A*.  The undercover agent gave $4,000 in cash to *Public Official A*.  The money was given to *Public Official A* for the benefit of and for delivery to the defendant.  *Public Official A* understood that the money was being paid in order to influence and reward the defendant in connection with his work on the city council.

When the defendant accepted the various amounts of money totaling $35,900 from the CS and the undercover agent, the defendant acted with the intent to be influenced and rewarded in connection with the city council's consideration of issues relating to the towing industry in the City of Detroit.  However, the defendant did not change any votes or take any official acts to assist the CS or the CS's business.

The defendant and *Public Official A* agreed to and did in fact introduce the CS and the undercover agent to other members of the Detroit City Council.

In each of calendar years 2018, 2019, and 2020, the City of Detroit received in excess of $10,000 in federal assistance.

## 6.   Advice of Rights

The defendant has read the Information, has discussed the charges and possible defenses with his attorney, and understands the crime charged. The defendant understands that, by pleading guilty, he is waiving many important rights, including the following:

A.   The right to plead not guilty and to persist in that plea;

B.   The right to a speedy and public trial by jury;

C.   The right to be represented by counsel—and, if necessary, have the court appoint counsel—at trial;

D.   The right to be presumed innocent and to require the government to prove the defendant guilty beyond a reasonable doubt at trial;

E.   The right to confront and cross-examine adverse witnesses at trial;

F.    The right to testify or not to testify at trial, whichever the

defendant chooses;

G.    If the defendant chooses not to testify at trial, the right to

have the jury informed that it may not treat that choice as

evidence of guilt;

H.    The right to present evidence or not to present evidence at

trial, whichever the defendant chooses; and

I.    The right to compel the attendance of witnesses at trial.

7.    **Collateral Consequences of Conviction**

The defendant understands that his conviction here may carry

additional consequences under federal or state law. The defendant

understands that, if he is not a United States citizen, his conviction

here may require him to be removed from the United States, denied

citizenship, and denied admission to the United States in the future.

The defendant further understands that the additional consequences of

his conviction here may include, but are not limited to, adverse effects

on the defendant's immigration status, naturalized citizenship, right to

vote, right to carry a firearm, right to serve on a jury, and ability to hold

certain licenses or to be employed in certain fields. The defendant

understands that no one, including the defendant's attorney or the Court, can predict to a certainty what the additional consequences of the defendant's conviction might be. The defendant nevertheless affirms that the defendant chooses to plead guilty regardless of any immigration or other consequences from his conviction.

## 8. Defendant's Guideline Range

### A. Court's Determination

The Court will determine the defendant's guideline range at sentencing.

### B. Acceptance of Responsibility

The government recommends under Federal Rule of Criminal Procedure 11(c)(1)(B) that the defendant receive a two-level reduction for acceptance of responsibility under USSG § 3E1.1(a). Further, if the defendant's offense level is 16 or greater and the defendant is awarded the two-level reduction under USSG § 3E1.1(a), the government recommends that the defendant receive an additional one-level reduction for acceptance of responsibility under USSG § 3E1.1(b). If, however, the government learns that the defendant has engaged in any conduct inconsistent with acceptance of responsibility—including, but

not limited to, making any false statement to, or withholding information from, his probation officer; obstructing justice in any way; denying his guilt on the offense to which he is pleading guilty; committing additional crimes after pleading guilty; or otherwise demonstrating a lack of acceptance of responsibility as defined in USSG § 3E1.1—the government will be released from its obligations under this paragraph, will be free to argue that the defendant not receive *any* reduction for acceptance of responsibility under USSG § 3E1.1, and will be free to argue that the defendant receive an enhancement for obstruction of justice under USSG § 3C1.1.

### C.    Other Guideline Recommendations

The parties have no other recommendations as to the defendant's guideline calculation.

### D.    Factual Stipulations for Sentencing Purposes

The parties have no additional factual stipulations for sentencing purposes.

### E.    Parties' Obligations

Both the defendant and the government agree not to take any position or make any statement that is inconsistent with any of the

guideline recommendations or factual stipulations in paragraphs 8.B, 8.C, or 8.D. Neither party is otherwise restricted in what it may argue or present to the Court as to the defendant's guideline calculation.

### F.    Not a Basis to Withdraw

The defendant understands that he will have no right to withdraw from this agreement or withdraw his guilty plea if he disagrees, in any way, with the guideline range determined by the Court, even if that guideline range does not incorporate the parties' recommendations or factual stipulations in paragraphs 8.B, 8.C, or 8.D. The government likewise has no right to withdraw from this agreement if it disagrees with the guideline range determined by the Court.

### 9.    Imposition of Sentence

### A.    Court's Obligation

The defendant understands that in determining his sentence, the Court must calculate the applicable guideline range at sentencing and must consider that range, any possible departures under the sentencing guidelines, and the sentencing factors listed in 18 U.S.C. § 3553(a), and apply any applicable mandatory minimums.

### B.  Imprisonment

#### 1.  Recommendation

Under Federal Rule of Criminal Procedure 11(c)(1)(B), the government recommends that the defendant's sentence of imprisonment on Count 1 not exceed the midpoint of the defendant's guideline range as determined by the Court.

#### 2.  No Right to Withdraw

The government's recommendation in paragraph 9.B.1 is not binding on the Court. The defendant understands that he will have no right to withdraw from this agreement or withdraw his guilty plea if the Court decides not to follow the government's recommendation. The government likewise has no right to withdraw from this agreement if the Court decides not to follow the government's recommendation. If however, the Court rejects or purports to reject any other term or terms of this plea agreement, the government will be permitted to withdraw from the agreement.

### C.    Supervised Release

### 1.    Recommendation

Under Federal Rule of Criminal Procedure 11(c)(1)(B), the parties recommend that the Court impose a three year term of supervised release.

### 2.    No Right to Withdraw

The parties' recommendation is not binding on the Court. The defendant understands that he will have no right to withdraw from this agreement or withdraw his guilty plea if the Court decides not to follow the parties' recommendation. The defendant also understands that the government's recommendation concerning the length of the defendant's sentence of imprisonment, as described above in paragraph 9.B.1, will not apply to or limit any term of imprisonment that results from any later revocation of the defendant's supervised release.

### D.    Fines

There is no recommendation or agreement as to a fine.

### E.    Special Assessment

The defendant understands that he will be required to pay a special assessment of $100 immediately upon sentencing.

## 10.   Appeal Waiver

The defendant waives any right he may have to appeal his conviction on any grounds. If the defendant's sentence of imprisonment does not exceed the guideline range determined by the Court, the defendant also waives any right he may have to appeal his sentence on any grounds.

## 11.   Collateral Review Waiver

The defendant retains the right to raise claims alleging ineffective assistance of counsel or prosecutorial misconduct, as long as the defendant properly raises those claims by collateral review under 28 U.S.C. § 2255. The defendant also retains the right to pursue any relief permitted under 18 U.S.C. § 3582(c), as long as the defendant properly files a motion under that section. The defendant, however, waives any other right he may have to challenge his conviction or sentence by collateral review, including, but not limited to, any right he may have to challenge his conviction or sentence on any grounds under 28 U.S.C. § 2255 (except for properly raised ineffective assistance of counsel or prosecutorial misconduct claims, as described above), 28 U.S.C. § 2241, or Federal Rule of Civil Procedure 59 or 60.

## 12. Consequences of Withdrawal of Guilty Plea or Vacation of Judgment

If the defendant is allowed to withdraw his guilty plea, or if the defendant's conviction or sentence under this agreement is vacated, the government may reinstate any charges against the defendant that were dismissed as part of this agreement and may file additional charges against the defendant relating, directly or indirectly, to any of the conduct underlying the defendant's guilty plea or any relevant conduct. If the government reinstates any charges or files any additional charges as permitted by this paragraph, the defendant waives his right to challenge those charges on the ground that they were not filed in a timely manner, including any claim that they were filed after the limitations period expired.

## 13. Use of Withdrawn Guilty Plea

The defendant agrees that if he is permitted to withdraw his guilty plea for any reason, he waives all of his rights under Federal Rule of Evidence 410, and the government may use his guilty plea, any statement that the defendant made at his guilty plea hearing, and the factual basis set forth in this agreement, against the defendant in any proceeding.

**14.   Parties to Plea Agreement**

This agreement does not bind any government agency except the United States Attorney's Office for the Eastern District of Michigan.

**15.   Scope of Plea Agreement**

This plea agreement is the complete agreement between the parties and supersedes any other promises, representations, understandings, or agreements between the parties concerning the subject matter of this agreement that were made at any time before the guilty plea is entered in court. Thus, no oral or written promises made by the government to the defendant or to the attorney for the defendant at any time before the defendant pleads guilty are binding except to the extent they have been explicitly incorporated into this plea agreement. If the parties have entered, or subsequently enter, into a written proffer or cooperation agreement, though, this plea agreement does not supersede or abrogate the terms of that agreement. This plea agreement also does not prevent any civil or administrative actions against the defendant, or any forfeiture claim against any property, by the United States or any other party.

## 16. Acceptance of Agreement by Defendant

This plea offer expires unless it has been received, fully signed, in the United States Attorney's Office by 5:00 p.m. on September 10, 2021. The government may withdraw from this agreement at any time before the defendant pleads guilty.

Saima S. Mohsin
Acting United States Attorney

David A. Gardey
Chief, Public Corruption Unit
Assistant United States
Attorney

Frances Carlson
Assistant United States
Attorney

Dated: 9-28-21

By signing below, the defendant and his attorney agree that the defendant has read or been read this entire document, has discussed it with his attorney, and has had a full and complete opportunity to confer with his attorney. The defendant further agrees that he understands this entire document, agrees to its terms, has had all of his questions answered by his attorney, and is satisfied with his attorney's advice and representation.

_____
Elliott Hall
Attorney for Defendant

_____
Andre Spivey
Defendant

Dated: 9/28/21

Page **19** of **19**