UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                CRIMINAL NO. 21-20490

vs.

                HON. VICTORIA A. ROBERTS

D-1   ANDRE SPIVEY,

    Defendant.
_____/

## SENTENCING MEMORANDUM OF THE UNITED STATES AS TO DEFENDANT ANDRE SPIVEY

    Andre Spivey accepted over $35,000 in cash bribes while betraying the trust of the citizens of Detroit. Instead of doing the job he was elected to do, Spivey made satisfying his own greed and sacrificing the best interests of the people of Detroit his job. Spivey's criminal conduct was not a one-time slip or an isolated serious lapse of judgment. Rather, on more than eight separate occasions over the course of five years, Spivey asked for and accepted cash bribes from a Detroit business owner seeking favors and a purchased vote on the Detroit City Council. The Court's sentence should reflect the seriousness of Spivey's crimes, the betrayal of Detroit's citizens who elected him, and the obvious need to deter other public officials from pocketing cash bribes while ostensibly serving the public interest. Under these

1

circumstances, the government believes that a sentence of forty months in prison would be a fair and just sentence for Spivey.

I. **ARGUMENT**

    A. **The Nature, Circumstances, and Seriousness of Spivey's Crimes (18 U.S.C. § 3553(a)(1)-(2))**

Throughout his involvement in this criminal conspiracy, Spivey was an elected member of the Detroit City Council, representing a district on the east side of the city. PSR ¶ 7. As a member of the city council, Spivey demanded money from various businessmen. One of those businessmen, who was involved in the towing industry, was approached by the FBI for information back in 2017. PSR ¶¶ 8-9. The businessman showed FBI agents text messages from Spivey from 2016, wherein Spivey asked the man for money in exchange for raising the dollar amount on towing contracts in the City of Detroit. PSR ¶ 9. This conduct by Spivey occurred before the businessman began working as a source of information for the FBI. *Id.* This businessman had heard from other businessmen in Detroit that they had been asked for and had given money to Spivey as well.

Starting in 2018, the source of information for the FBI began recording his meetings with Spivey where Spivey asked for cash bribes. PSR ¶ 10. The very first recorded bribe payment in February 2018 concerned Spivey's need for cash for a trip to Las Vegas. Spivey demanded and took $2,000 in cash. *Id.* This money was

2

for Spivey's personal use and enjoyment, and it was not going to be used for any political campaign, for a 501(c)(4) non-profit organization, or for some other purpose. In exchange for the money, Spivey agreed to help the businessman get a towing contract with the City of Detroit. *Id.*

Starting with that first recorded February 2018 bribe payment, Spivey then proceeded to take seven more bribe payments from the source of information and from an undercover federal agent. The eight recorded bribes accepted by Spivey amounted to a total of $35,900. PSR ¶ 17. Spivey admitted in his statement to the Court that for each of the eight bribe payments it was Spivey who reached out to the confidential source and asked for money. On each of the eight recorded meetings, the source of information and the undercover federal agent made it clear that the cash accepted by Spivey was given in exchange for Spivey's help getting a towing contract in the city, getting an auto repair contract with the city, and getting Spivey's help concerning a proposed towing ordinance pending before the Detroit City Council. PSR ¶¶ 9-15.

Another significant part of Spivey's corrupt criminal conduct was the fact that he enlisted a member of his own staff in the conspiracy. PSR ¶ 13. Starting in January 2020, Spivey directed this city staff member to collect over $20,000 in bribe payments from the businessman and from the undercover agent for delivery to Spivey. PSR ¶¶ 13-15. Thus, Spivey was willing to corrupt another city employee

and recruit him into the conspiracy, so that Spivey could collect more cash. PSR ¶¶ 13-15.

Besides recruiting a member of his own staff into the conspiracy, Spivey also agreed to introduce the FBI confidential source to other members of the Detroit City Council. PSR ¶ 16. Spivey did in fact introduce the confidential source to two other members of the Detroit City Council. *Id.* Spivey did this after Spivey himself had already accepted $35,900 in cash bribes. Spivey's open willingness to further corrupt other elected officials of the City of Detroit demonstrates and emphasizes the seriousness of Spivey's criminal conduct.

Repeatedly throughout the conspiracy, Spivey expressed concern about getting caught taking bribes by law enforcement. For example, Spivey asked the confidential source to "make it look like a napkin" in referencing a cash bribe payment sitting on a table at a restaurant. Spivey also said, "I don't want to touch it [the bribe payment] right here" in fear that someone could be watching. During another bribe payment, after meeting with an undercover federal agent, Spivey sought reassurance from the Detroit businessman assisting the FBI. Spivey asked if he could trust the undercover agent because Spivey presciently feared that "we got Feds everywhere." At yet another bribe payment meeting, Spivey typed a draft text message on his phone and showed the message to the confidential source. Spivey's message asked if he could trust the undercover agent. Spivey did this in a way to

avoid any verbal discussion of the topic in case there were any listening devices capturing their conversation. These examples demonstrate that during the conspiracy Spivey was keenly aware that he was brazenly breaking the law through bribery, and that he was willing to obstruct law enforcement's efforts to detect his misconduct.

## B. Respect for the Law and Just Punishment (18 U.S.C. § 3553(a)(2)(A))

A significant sentence is needed in this case to promote respect for the law and provide just punishment. Through his election, Spivey represented the citizens of Detroit. Through his criminal conduct, Spivey betrayed those same citizens. Spivey undermined the trust that citizens have in their elected leaders. He increased cynicism by the electorate and a belief that all public officials are on-the-take. Instead of having growing confidence in a vibrant and reforming city, Spivey's betrayal left the people of Detroit with the sick and disgusted feeling that nothing has changed, and that corruption is endemic to their city. For this, Spivey must receive significant punishment. The citizens of Detroit deserve vindication.

As described by a federal judge in the prosecution of a corrupt mayor of Bridgeport, Connecticut:

> Government corruption breeds cynicism and mistrust of elected officials. It causes the public to disengage from the democratic process because . . . the public begins to think of politics as "only for the insiders." Thus corruption has the potential to shred the delicate fabric of democracy by making the

5

> average citizen lose respect and trust in elected officials and give up any hope of participating in government through legitimate channels.

*United States v. Ganim*, No. 3-01-CR-263, 2006 WL 1210984, at *5 (D. Conn., May 5, 2006), *aff'd*, 510 F.3d 134 (2d Cir. 2007).  Spivey's actions here helped to shred that faith in democracy of the citizens of this city and district.

Whether or not Spivey actually got around to having a real opportunity to cast a corrupt vote on the issue of towing, there is no question that Spivey took every opportunity to accept cash bribe after cash bribe, knowing full well that the money was given to him to influence and reward him as a corrupt member of the Detroit City Council.  For this, Spivey is deserving of serious punishment.

It is apparent that Spivey has a number of supporters who personally admire him, including in his role as a minister.  There is no question that the Court should take this into consideration in fashioning a sentence.  However, this admiration, his family, and his good acts within the community do not reduce the need to vindicate the law, the citizens of Detroit, and the requirement of just punishment.  This is especially true in a case where the criminal conduct affects so many people and undermines the trust of so many in good government.  Spivey's admirable personal qualities do not reduce the damage that he has done to our community.

Public corruption, such as that perpetuated by Spivey, is a serious crime that harms our democracy.  During President Theodore Roosevelt's State of the Union

6

Address on December 7, 1903, he emphasized the profound damage that public corruption inflicts upon the government and its people:

> There can be no crime more serious than bribery.  Other offenses violate one law while corruption strikes at the foundation of all law.  Under our form of government all authority is vested in the people and by them delegated to those who represent them in official capacity.  There can be no offense heavier than that of him in whom such a sacred trust has been reposed, who sells it for his own gain and enrichment. . . .  He is as wicked as the murderer, for the murderer may only take one life against the law, while the corrupt official and the man who corrupts the official alike aim at the assassination of the commonwealth itself.

2 *State of the Union Messages of the Presidents* 2081 (1966).  The citizens of this city had the right to expect that Spivey would use all of his skills, talents, and integrity to work for their best interests, rather than to undermine their trust in the government he was supposed to represent.

### C. Deterring the Criminal Conduct of Others (18 U.S.C. § 3553(a)(2)(B))

The Court should impose a prison sentence on Spivey in order to serve the important purpose of deterring other public officials in this district and beyond from engaging in similar misconduct.  *See* 18 U.S.C. § 3553(a)(2)(B).  General deterrence has its greatest impact in white-collar cases, like this one, because these crimes are committed in a more rational and calculated manner than sudden crimes of passion or opportunity. *United States v. Peppel*, 707 F.3d 627, 637 (6th Cir. 2013).  In this case, Spivey's calculated decisions to accept cash bribes took place more than eight separate times over the course of five years.  Given his position as an elected public

7

official at the time of his criminal activity, Spivey should be punished appropriately. The example this Court makes through its sentence will send a distinct message to other public officials in southeast Michigan that corruption will not be tolerated.

In deciding upon a sentence, the Court should consider other corruption sentences imposed in similar cases. Former Detroit City Councilwoman Monica Conyers received a sentence of 37 months of imprisonment following a guilty plea to bribery. *United States v. Conyers*, Case No. 09-20025-Cohn, Docket No. 159 (E.D. Mich.). Conyers' Chief of Staff, Sam Riddle, also received a sentence of 37 months in prison. *United States v. Riddle*, Case No. 09-20295-Battani, Docket No. 111 (E.D. Mich.). For comparison purposes, Spivey accepted $35,900 in bribes on eight separate occasions, while Conyers was convicted of accepting $16,000 in bribes. *Conyers*, Case No. 09-20025, Docket No. 169 at 2.

Former Detroit City Councilman Alonzo Bates was sentenced to 33 months in prison after being convicted at trial for *stealing* $91,000 from the city through a ghost employee scheme, but not through bribery as with Spivey. *United States v. Bates*, Case No. 05-81027-Roberts, Docket No. 107 (E.D. Mich.). Tahir Kazmi, the former Wayne County Chief Information Officer, was sentenced to 57 months in prison following a guilty plea after Kazmi accepted $70,000 in bribes. *United States v. Kazmi*, Case No. 12-20292-Murphy, Docket No. 108 (E.D. Mich.). The former Supervisor of Chesterfield Township, Michael Lovelock, received a sentence of 24

months in prison after accepting $30,000 in bribes on a garbage contract. *United States v. Lovelock*, Case No. 16-20793-Cleland, Docket No. 33 (E.D. Mich.). Brian Kischnick, the former Troy City Manager, received a sentence of 30 months in prison after accepting $20,000 in bribes and favors. *United States v. Kischnick*, Case No. 18-20469-Edmunds, Docket No. 29 (E.D. Mich.). Paul Stewart, a City of Detroit pension trustee and police officer, was sentenced to 57 months in prison after being convicted of accepting $33,000 in bribes connected to the Detroit pension system. *United States v. Stewart*, Case No. 12-20030-Edmunds, Docket Nos. 474 & 522 (E.D. Mich.).

Former Clinton Township Trustee Dean Reynolds was sentenced to 204 months (17 years) in prison for taking bribes worth $130,000 from multiple sources. In that case, Reynolds went to trial, and the government was able to establish the value of the benefit received by the bribe payers, which was over $1 million. *United States v. Reynolds*, Case No. 16-20732, Docket Nos. 273 & 283.

This sampling of criminal sentences in similar cases demonstrates that a sentence for Spivey within the guideline range of 37 to 46 months would be reasonable and just.

   D.  **Protecting the Public from Further Crimes by Spivey**
       **(18 U.S.C. § 3553(a)(2)(C))**

Through his acceptance of responsibility and his open acknowledgment of wrongdoing at his plea hearing, Spivey has demonstrated a recognition of the criminal nature of his actions. Given Spivey's criminal activity was centered on taking advantage of his position as an elected public official, a position which Spivey has now lost, it appears highly unlikely that Spivey will seek to commit additional similar crimes in the future.

**II.   CONCLUSION**

Over the course of five years, Andre Spivey repeatedly demanded and accepted bribes using his position as an elected Detroit City Councilman to satisfy his own greed and personal financial needs. Spivey has openly acknowledged that he accepted $35,900 intending to be influenced and rewarded in his work as an elected official. In his 2017 re-election campaign, Spivey promised on his campaign website "to be responsible and accountable to every citizen." Through a significant

prison sentence of 40 months of imprisonment, this Court can truly hold Spivey responsible and accountable on behalf of all of the citizens of Detroit and this district.

Respectfully submitted,

DAWN N. ISON
United States Attorney

s/DAVID A. GARDEY
s/FRANCES CARLSON
Assistant U.S. Attorneys
211 West Fort Street, Ste. 2001
Detroit, Michigan 48226-3211
313-226-9591

Dated: January 5, 2022

## CERTIFICATE OF SERVICE

I hereby certify that on January 5, 2022, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will send notification of such filing to the following:

Elliott Hall, Esq.

                                          s/DAVID A. GARDEY
                                          Assistant U.S. Attorney
                                          211 West Fort Street, Ste. 2001
                                          Detroit, Michigan 48226-3211

Dated: January 5, 2022                 313-226-9591