UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

  vs.

D-1 ANDRE SPIVEY,

  Defendant.
_____ /

CRIMINAL NO. 21-20490

HON. VICTORIA A. ROBERTS

**GOVERNMENT'S RESPONSE TO DEFENDANT'S
SENTENCING MEMORANDUM**

The government responds to certain arguments made by defendant Andre Spivey in his sentencing memorandum as follows:

**I. Spivey Did Not Cooperate With the Investigation, But Actively Lied**

Spivey seeks to mislead the Court into believing that he truthfully and actively cooperated with law enforcement after being approached by the FBI. Spivey Memorandum, Docket No. 15, at 14-15. Spivey claims that he "cooperated extensively to help investigate and eventually prosecute others," and that he "was prepared to provide substantial cooperation." *Id.* at 14-15, 18. He seeks a downward variance for this "cooperation" despite the government not filing a Section 5K1.1

1

motion. However, rather than cooperating, Spivey actually obstructed and lied repeatedly during his debriefings with FBI agents and prosecutors.

Spivey lied when he denied accepting bribes from other Detroit businessmen. In fact, Spivey failed a polygraph examination on October 22, 2020, on the issue of whether he had accepted bribes from a particular Detroit business owner who had issues pending before the City Council. During interviews with the government, Spivey had emphatically denied receiving any bribes from the business owner, despite the FBI having significant source information indicating that Spivey had taken money from the business owner. In an effort to resolve the issue and see if cooperation could succeed, Spivey was given a polygraph examination. During the examination, Spivey again denied having received any bribe payments from the Detroit business owner. After being informed that he had failed the examination, Spivey changed his story and stated that "there could have been instances where he received a bribe from" the business owner. However, Spivey would not provide any specific details about those bribes. In a subsequent interview, Spivey again denied receiving bribes from that individual.

Spivey also harmed the investigation by warning the member of his staff with whom Spivey had conspired to commit bribery. The day after the FBI approached Spivey about possibly cooperating with the investigation, Spivey told his staffer to watch out for law enforcement. Spivey also told the staffer the identity of the

confidential source who had paid bribes to Spivey and the staffer. Later, in June 2021, Spivey told another public official in Detroit the identity of the confidential source, and that Spivey had been attempting to cooperate with the FBI. The public official subsequently informed other individuals in city government of the identity of the FBI confidential source, who then passed the information on to a target of the government's investigation. Spivey leaked all of this information despite the admonitions of the FBI agents that he keep his dealings with them confidential or he could harm his efforts to cooperate.

Beyond obstructing the investigation by lying and leaking, Spivey also did not present anything, beyond his agreement to plead guilty to conspiracy, that would implicate anyone else in criminal wrongdoing. In some cooperation cases, the government interviews a defendant who is willing to cooperate against other individuals, and the defendant honestly attempts to do so. However, for various reasons, law enforcement is unable to successfully bring cases against those other individuals. Because the cooperation was not of substantial assistance in the prosecution of other individuals, the government cannot bring a Section 5K1.1 downward departure motion. In such cases, the government can tell the Court that the defendant honestly sought to provide cooperation, but that new cases just could not be built.

Spivey's case is different. The government cannot and did not tell this Court that Spivey honestly attempted to cooperate. First, in this case, Spivey lied to law enforcement. Second, Spivey leaked information from the investigation to other targets. Third, Spivey claimed that he could not identify anyone who had paid him bribes or who had otherwise sought to illegally influence him besides the confidential source. Given these circumstances, it is unclear on what basis Spivey is asking the Court for a downward variance based on his purported "substantial" cooperation. Spivey's memorandum is empty of any information that Spivey provided to the government during his supposed cooperation. Even setting aside the issue of Spivey lying during his debriefings and failing a polygraph, there is simply no possible basis for which Spivey can claim that his sentence should be reduced given that he failed to identify a single bribe beyond the ones that the FBI already knew about. Instead, Spivey is misleading the Court and simply seeking to depress his sentence by claiming "cooperation."

## II. Spivey Conceals that He Used Bribe Money to Pay for a Trip to Vegas

Spivey seeks to put a positive spin on his acceptance of $35,900 in bribe money by claiming that he just used the money to pay taxes and bills of his family. This just does not present a full portrait of what Spivey did. For example, Spivey claims that in February 2018, he asked the confidential source for a "$1,500 loan for *taxes and bills*." Spivey Memorandum, Docket No. 15, at 5 (emphasis added). In

fact, however, Spivey asked the confidential source for the money in order to pay his expenses to go to Las Vegas in order to celebrate his own birthday. On February 17, 2018, Spivey had the following recorded conversation with the confidential source:

Spivey: I need your help with something, man.
CS: What do you got?
Spivey: (UI) I'm a little short. If you can, man.
CS: Yep.
Spivey: We going to uh, see (UI) out in Vegas.
CS: Yeah.
Spivey: We're a little short, man. With taxes and bills. This time a loan, man.
* * *
CS: How long you gonna be gone to Vegas?
Spivey: Leave Monday, come back early Friday. We might (UI) morning. Friday.
CS: Alright. Monday morning. I'm here. Fifteen. That's all you need?
Spivey: Yeah, I that's all I'll need. I think so.
CS: Alright. I got you.
* * *
CS: You need it for Vegas, I got you.
Spivey: Yeah, I appreciate it.
CS: I-It's good? That's all you need?
Spivey: Yeah… yeah…
CS: I'll get you, I'll get you a little more. I got it, I got it. Ok, ok. I got you man.
Spivey: Alright.

Spivey made it clear that he needed $1,500 "for Vegas." Spivey may very well have been strapped for cash because of taxes and bills, but Spivey wanted the bribe money that time so that he could party in Vegas for his birthday, eventually accepting $2,000 in cash.

This obviously does not create the best impression for a pastor, minister, and city councilman, but it is the truth, and the Court should not be misled into thinking

5

Spivey used the $35,900 for groceries and necessities. Furthermore, Spivey's repeated reference to "loans" in his sentencing memorandum does not change the fact that the bribe payments were not "loans," given that not a single "loan" was ever repaid.

### III. Spivey's reliance on the Gabe Leland Case Is Misplaced

Without addressing the *eight* other Michigan public corruption cases cited by the government wherein courts imposed significant prison sentences, Spivey seems to argue that the resolution of the case against Gabe Leland is the only case that matters in terms of avoiding sentencing disparities. However, the Leland case differs significantly, and there were substantial changes in the strength of the government's case that caused the United States to resolve the Leland case as it did. None of those circumstances are present here, and the Leland resolution should not affect the Court's sentencing decision for Spivey in light of the many other comparable cases.

Leland was initially charged in a 2018 federal bribery case in connection with Leland's acceptance of a $7,500 cash reward from Detroit businessman Robert Carmack. The Leland case was resolved on May 3, 2021, when Leland resigned from office, pled guilty to a state felony charge of misconduct in office, and was sentenced to two and one-half years of probation. As part of that agreement, the United States then dismissed the federal case.

The government resolved the case against Leland as it did because the strength of the government's case had been substantially weakened as a result of the conduct of Robert Carmack, the government's primary witness against Leland. After Leland was indicted, Carmack did the following:

- Carmack became deeply enmeshed in a bitter personal feud against Detroit's Mayor Mike Duggan
- Carmack hired private investigators to follow, stalk, and tape Mayor Duggan
- Carmack released videotape of the Mayor to the media
- Carmack claimed having a videotape of illicit activity by the Mayor, allegations that Carmack never backed up
- Carmack hired a trailer with a giant video screen to drive about the City of Detroit playing portions of his investigators' videotape of the Mayor
- Carmack repeatedly hired airplanes to fly over the city trailing signs attacking the Mayor for his alleged extramarital affair and other matters
- Mayor Duggan asked the Michigan State Police to investigate Carmack for possible extortion
- Carmack secretly taped (1) the Inspector General of Detroit, (2) a local criminal defense attorney, and (3) a defendant in the federal demolition case
- Carmack was charged with four state felonies for fraud in December 2018 stemming from a $1 million real estate fraud scheme
- Carmack was charged with felony drunk driving in October 2019
- Leland's case centered on a single cash payment of $7,500 by Carmack
- Spivey took eight payments totaling $35,900 from an *undercover federal agent* and a source

Given the vast panoply of new charges against, and questionable conduct by, the key government witness against Leland, the government was forced to re-evaluate the strength of its case. In a federal trial against Leland, there was a real danger that a trial would be turned into a circus concerning Carmack's credibility

7

and his various actions, rather than being focused on Leland's conduct.  However, because of the many problems connected with Carmack as a witness, the resolution of the Leland matter was reasonable, given Leland's immediate resignation, his guilty plea to felony misconduct in office, and his two years of probation.

Aside from the special circumstances of the Leland case, the government identified a number of other comparable cases where significant prison sentences were needed.  These cases support a sentence within the sentencing guideline range for Spivey.

Respectfully submitted,

DAWN N. ISON
United States Attorney

s/DAVID A. GARDEY
s/FRANCES CARLSON
Assistant U.S. Attorneys
211 West Fort Street, Ste. 2001
Detroit, Michigan 48226-3211
313-226-9591

DATED: January 14, 2022

## CERTIFICATE OF SERVICE

I hereby certify that on  January 14, 2022, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

Elliott Hall, Esq.

                                           s/DAVID A. GARDEY
                                           Assistant United States Attorney
                                           211 W. Fort Street, Suite 2001
                                           Detroit, MI  48226
                                           (313) 226-9591

DATED: January 14, 2022