UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN, SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>vs. )<br>)<br>ANDRE SPIVEY, )<br>)<br>Defendant ) | Case No. 21-CR-20490<br>Hon. Victoria Roberts |

### DEFENDANT'S REPLY TO GOVERNMENT'S RESPONSE TO DEFENDANT'S SENTENCING MEMORANDUM

NOW COMES, Defendant, Andre Spivey, by and through his attorney, Elliott S. Hall, and in his reply to the Government's Response to Defendant's Sentencing Memorandum states as follows:

The United States Attorney's Office paints a picture of Andre Spivey different from the hundreds of people he has encountered in this city and across the country. *No one*—from high level Detroit city officials, clergy, lawyers, doctors, family and friends—shares the impression that Andre Spivey is greedy, deceitful and a liar. The Government's brief exhibits a vindictiveness that goes outside of professional guidelines of law enforcement to being a personal attack. Defendant Spivey trusts this Honorable Court will take note of the Government's offensive tone, as well as numerous misstatements of fact, to be set forth below.

**I.  Defendant Spivey Cooperated Fully With the FBI and Responded Truthfully to Questioning**

The Government brief conflates the word "bribes" with "payments" when describing Defendant Spivey's alleged responses to questioning. A "bribe," as Defendant Spivey has always understood the term, means "a payment to persuade someone to act in one's favor."

1

Defendant Spivey still contends he did not take bribes from the Confidential Source. And, the Government offers not one example of Defendant Spivey accepting money offered to persuade him to act (vote) in the Confidential Source's favor. **Not one.** Conversely, his colleague, Council Member Gabe Leland, was caught and convicted for agreeing to accept $15,000 and actually receiving $7,500 *in exchange for his vote on a controversial land deal*. The fact is Defendant Spivey voted in favor of **30** action items before City Council that went *against* the Confidential Source's business interests and/or in favor of its *competitors*. Thirty times. (Defendant's Sentencing Brief, pp. 4-9)

Next, the Government's focus on Defendant Spivey's alleged failure on the polygraph is meaningless. Defendants rarely pass a government-operated polygraph test, it cannot be used as evidence in a criminal case, and should have no bearing on this Honorable Court's sentencing determination. In the post-polygraph questioning, without his counsel present, Defendant Spivey stated *depending on the Government's definition of a bribe*, then it is possible the Government would find his actions constituted receipt of a bribe from the Confidential Source. Defendant Spivey did not admit he accepted a bribe and then change his story—as the Government misrepresents in its brief.

The Government never asked Defendant Spivey during the polygraph whether he accepted a bribe from another businessman. It had two additional potential targets they hoped to prove had bribed Spivey. After the post-polygraph meetings, Spivey provided proof of payment from one of the other businessman *and* proof that he repaid the person. The Government knew of another businessman contributing to his 501(c)(4) to advance funds for an event; and, in a meeting prior to his pleading, Spivey shared that a series of repayments had begun before he was ever approached by the FBI. The Government's disappointment its other investigations were

2

unfruitful fuels an improper spin that Defendant Spivey has not been truthful in his answers and has not been cooperative for other investigations.

Next, the Government misrepresents that Defendant Spivey went to his staffer the next day after the FBI first contacted him causing harm to their investigation. Actually, it was approximately two weeks after the first contact that Defendant Spivey advised his staffer about the contact. Spivey assumed he would probably need to begin gathering campaign finance documents regarding campaign contributions and loans from the Confidential Source, which his staffer possessed. Defendant Spivey spoke to his staff member only in generalities. The Government contacted the staffer several months later and asked him to wear a wire to attain further evidence against Defendant Spivey. The staffer declined to go undercover. The Government was disappointed and now improperly links the staffer's decision to Defendant Spivey's conversation with the staffer months earlier.

Although Defendant Spivey admitted he advised one high level public official of his situation, it defies credulity that a conversation with that one person subsequently tipped off a target and thwarted a significant, ongoing FBI investigation. If that were true, the Government would have raised this issue much earlier. The Government's examples of how Defendant Spivey "harmed" their investigations are exaggerations to bolster the hostile tone of their brief.

Lastly, with regard to Defendant Spivey's cooperation with other investigations, he was ready, willing and *complied* with all FBI requirements, to wit: he purchased four particular sport jackets that were to be fitted with wires to record conversations, he agreed to wear special eyeglasses fitted with cameras, he attempted to secure a particular cell phone provider that does not require a subpoena to obtain text messages, and he retained prior text messages between himself and other potential targets. In fact, Defendant Spivey and his attorney met with the FBI

3

five times over a four-month period and were scheduled to meet with the FBI on November 18, 2020, to discuss next steps. However, the Government cancelled the meeting and never called back despite Defendant Spivey's repeated calls reiterating his desire to cooperate and to participate in other investigations. The Government did not contact Defendant Spivey or his attorney for eight months. To this day, Defendant Spivey does not know why the FBI reneged on its interest in utilizing him as a confidential source. The FBI may have found that Defendant Spivey could not be useful to their investigations against the other targets, but this does not negate his efforts to substantially cooperate.

## II. Government Misrepresents the Conversation Regarding Trip to Vegas

The recorded conversation clearly indicates that because of the trip to Las Vegas, Defendant Spivey ended up short on funds to pay taxes and bills. The *Confidential Source* said: "You need it for Vegas." The takes it out of context and misleads the Court. Defendant Spivey and family went to Las Vegas for an inexpensive vacation during his children's winter break. The four of them stayed in one hotel room. Defendant Spivey has proof the trip had already been paid for and that when the other bills came in he needed a loan from the Confidential Source. The Government attempts to paint a picture that Defendant ("a pastor, a minister, and a councilman" it emphasizes) went to Las Vegas for a weekend of debauchery, which is absolutely untrue and inflammatory. A husband and father scheduled a family trip and then ran into financial troubles. Period.

## III.    Government's Distinction of Gabe Leland Case is Weak; Desperate

The Government attempts to show its case against Gabe Leland for accepting a *quid pro quo* $7,500 bribe to vote a particular way on a specific land deal is somehow different and weaker than Defendant Spivey's case. The state case against Leland had the same facts, the

4

same witnesses and the same unsavory briber, political provocateur and criminal, Robert Carmack, as the federal case. None of this deterred the state court from pursuing its case and obtaining a conviction, but the federal government could not make it work? Also, Spivey resigned, just like Leland. The Government has an uphill battle trying to justify why it dropped charges against Gabe Leland, but wants a stiff 40-month sentence against Andre Spivey—who voted 30 times *against* the Confidential Source's interests. It makes no sense whatsoever.

Incarcerating Mr. Spivey serves no purpose. This is not a career criminal and the public is not at risk of future criminal activity. There is no justifiable reason to make an example out of Mr. Spivey with incarceration that was not present in Gabe Leland's case. The Government knows Mr. Spivey does not need to be rehabilitated through incarceration. For whatever reason, the United States attorneys have a personal desire to treat Mr. Spivey differently.

Defendant Spivey respectfully requests that this Honorable Court impose a sentence of probation, which follows the standard under 18 USC §3553(a) that the sentence be "sufficient but not greater than necessary." He has been sufficiently punished by the consequences of his guilty plea—professionally, financially, and personally.

Respectfully submitted,

ELLIOTT HALL, PLLC

Elliott S. Hall (P14546)

Dated: January 15, 2022